IN THE UNITED STATES DISTRICT OF OHIO
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Bloomer Heat & Air, LLC, | : | Case No: 2:24-cv-4151 |
| | : | |
| Plaintiff, | : | Judge Sarah Daggett Morrison |
| | : | |
| v. | : | Magistrate Judge Kimberly A. Jolson. |
| | : | |
| Comfort Crew Heating & Cooling, LLC | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT COMFORT CREW HEATING & COOLING LLC'S MOTION TO DISMISS PLAINTIFF BLOOMER HEAT & AIR LLC'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)**

Now comes Defendant Comfort Crew Heating & Cooling, LLC ("Comfort Crew"), and moves this Court to dismiss Plaintiff Bloomer Heat & Air LLC d/b/a Comfort Crew Heating & Air ("Bloomer")'s November 12, 2024 complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Andrew C. Clark
Andrew C. Clark    (0083519) Trial Counsel
Colleen R. Vance    (0099665)
**Onda LaBuhn Ernsberger & Boggs Co., LPA**
acc@ondalabuhn.com
crv@ondalabuhn.com
35 North Fourth Street, Suite 100
Columbus, Ohio 43215
Phone: (614) 716-0500
Fax: (614) 716-0511
*Counsel for Defendant Comfort Crew Heating & Cooling, LLC*

1

**MEMORANDUM IN SUPPORT**

This is a simple case of a small HVAC business located in Oklahoma (apparently operating out of his house) attempting to extort licensing payments from other small business owners across the country who have the misfortune of utilizing a common naming convention for their heating and air conditioning businesses. To accomplish this goal, Bloomer obtained a trademark for a graphical logo containing a black-haired cartoon man wearing a two-tone aqua/red uniform and carrying a gray wrench (which appears to be larger than the man himself) standing/walking atop a yellow colored keystone containing "COMFORT CREW" in red lettering over a green rectangle containing "HEATING & AIR" in white lettering depicted as follows:



Bloomer's trademark is not a standard character claim but instead is a special form depiction which includes shapes and colors as part of a graphical depiction. Bloomer now comes to Ohio (more than 700 miles from Bloomer's place of business) and asks this Court to subject Comfort Crew to months of attorney fees, litigation costs, and reputational risk because it believes Comfort Crew is infringing upon Bloomer's stylized logo. Bloomer claims such infringement through the operation of a heating and air conditioning business in Central Ohio under the name "Comfort Crew Heating & Cooling LLC" (Ohio Entity 5109690) utilizing a wholly dissimilar company logo which does not have any cartoon people, does not depict any wrenches or tools, and does not contain any red or white lettering:



Simply stated, Bloomer does not own a trademark on the words "Comfort Crew" but does appear to own a trademark on the specific stylized and graphical representation within the registered mark. Nonetheless, there is no risk of any confusion between these drastically dissimilar logos. Similarly, there is no risk of confusion that anyone in central Ohio would accidentally hire Bloomer to drive approximately 13-hours to address their heating and cooling needs. Similarly, there is no risk that Comfort Crew would send its employees across Indiana, Illinois, Missouri, and into Oklahoma, Arkansas, or Kansas to perform such services.

Bloomer's claims in this case are wholly without merit, are borderline frivolous, and the interests of justice and judicial economy support an outright dismissal of all of Bloomer's claims with prejudice.

**I.     BACKGROUND**

On November 12, 2024, Bloomer filed its complaint ("Complaint"). (Complaint, ECF No. 1). Within the Civil Cover Sheet attached to the Complaint, Bloomer identifies the basis for federal court jurisdiction as being exclusively Federal Question jurisdiction (ECF No. 1-2). The Complaint asserts 6 causes of action as follows: (i) Federal Trademark Infringement (ECF No. 1 at ¶¶ 25-31); (ii) Federal Unfair Competition (*Id.* at ¶¶ 32-36); (iii) Federal Trademark Dilution (*Id.* at ¶¶ 37-47); (iv) Deceptive Trade Practices under Ohio law (*Id.* at ¶¶ 48-53); (v) Trademark Infringement under Ohio law (*Id.* at ¶¶ 54-59), and (vi) Unfair Competition under Ohio law (*Id.* at ¶¶ 60-64). Bloomer has attached a single exhibit to his Complaint being **Exhibit A** – Registration Certificate

Number 4,940,442 from the United States Patent and Trademark Office ("**Trademark**") containing 3 pages (ECF No. 1-1 PageID 14-16).

The Complaint makes various factual allegations which, for purposes of this Motion, must be taken as true, but this Court is not required to accept legal conclusions or threadbare allegations for purposes of this Motion. The following allegations form the factual basis of this Motion. On April 23, 2014, Bloomer was formed as an Oklahoma limited liability company and it operates from a single location at 105 S. Keats, Stillwater, Oklahoma. (ECF No. 1 at ¶¶ 1-2). Bloomer has done business within the states of Oklahoma, Kansas, and Arkansas but has not engaged in any business outside of those three states. (*Id*. at ¶ 5). Bloomer is the owner of U.S. Trademark Reg. No. 4,940,442 registered on April 19, 2016, which is a valid and subsisting trademark for "air conditioning contractor services; installation and repair of air conditioning apparatus; installation and repair of heating, ventilating and air conditioning equipment; installation and replacement service for heating, ventilating and air conditioning systems." (ECF No. 1 at ¶¶ 12-13). The Trademark has been used by Bloomer for more than 8 years in connection with its business and "serves uniquely to identify Plaintiff's services." (*Id*. at ¶¶ 15-17). Comfort Crew is an Ohio limited liability company which was formed on September 12, 2023 and operates the website www.comfortcrewohio.com. (ECF No. 1 at ¶¶ 19-20).

A review of the United States Patent and Trademark Office database[1], produces a 3-page report ("**Bloomer USPTO Report**") relating to the Trademark, a copy of which generated on January 9, 2025, and is attached to this Motion as **Exhibit 1**. The Bloomer USPTO Report confirms the Trademark is not a "Standard Character Claim" but instead is "an illustration drawing which includes word(s)/letter(s)/number(s)" and is a "Color Drawing" with specific design elements

---

[1] https://tmsearch.uspto.gov/search/search-information

including stylized men depicted in caricature form and wrenches. The Trademark itself consists of:

> an image of a man with tan skin, a white shirt, black hair, an aqua hat and aqua jacket, red pants and black shoes. The man is carrying a gray wrench positioned above a keystone shape containing the words "comfort crew" in red all over the words "heating and air" in white superimposed over a green rectangle. The Keystone shape appears in the color yellow with a green outline. A Yellow border appears around the entire mark.

(ECF No. 1-1 PageID 15). "The color(s) green, red, white, black, aqua, gray, tan and yellow is/ are claimed as a feature of the mark." (*Id.*) In contrast, the Comfort Crew logo does not utilize any of the graphical elements which comprise the Trademark and uses black lettering instead of the red and white lettering specifically claimed by Bloomer as part of the Trademark. Plaintiff alleges that a Google search for "Comfort Crew" produces a result with Comfort Crew as one of the first results but has further supplied a screen shot of the search results[2] which depicts Comfort Crew's logo without any semblance of the Trademark. (ECF No. 1 at ¶¶ 21-22).

## II.  LAW & ARGUMENT

Fed.R.Civ.P. 8(a) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 12(B)(6) authorizes a motion to dismiss for failure to state a claim upon which relief can be granted. Although a court accepts the facts a plaintiff alleges as true when ruling on a motion to dismiss, "a formulaic recitation of the elements of a cause of action will not do*." Bell All. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1959 (2007). The tenet that a court must accept as true all of the allegations contained in a

---

[2] On information and belief, the Google search depicted within the Complaint was performed by Bloomer's counsel located in Ohio wherein Google has provided geographically relevant results, but an identical search performed in Oklahoma, Arkansas, or Kansas would produce results with Bloomer as one of the most relevant results.

complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1949 (2009).

In *Iqbal*, the Supreme Court warned a court should not confuse conclusory allegations with factual allegations. *Id.* at 1949. As the *Iqbal* Court explained, "a plaintiff's obligations to provide the 'grounds of his entitle[ment] to relief' [under Fed.R.Civ.P. 8(a)(2)] requires more than labels and conclusions* * *." *Twombly*, at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, at 1949. Accordingly, to sufficiently plead a claim, a plaintiff must allege sufficient facts that plausibly establish each element of the cause of action. *Id.* at 1949. In 2020, Judge Carr issued an opinion noting as follows:

> Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal, supra,* 556 U.S. at 679. Terms like "bias," "prejudice," "collusion," "conspiracy," "fraud," "fail to disclose" all express the legal conclusions that plaintiffs want the trier of fact to reach: standing alone, they are not *facts* and thus fail to state claims under the *Iqbal/Twombly* mandate.
>
> "Plaintiff must do more than merely speculate and create suspicion." *Dye v. Wells Fargo Home Mortg.*, 2014 WL 1908285, at *6 (E.D. Mich. 2014), *Accord, e.g., McKinney v. Smith*, 2018 WL 3197434, at *9 (W.D. Mich., 2018); *Vickery v. Caruso*, 2008 WL 4058721, at *6 (E.D. Mich. 2008). A mere possibility that plaintiff might prevail is not enough. *Iqbal, supra*, 556 U.S. at 678.

<u>James v. Norfolk Southern Ry. Co.</u>, N.D.Ohio No. 3:19-CV-1498, 2020 WL 1316513, *2.

Based on these standards, Bloomer's Complaint is insufficient in that it fails to sufficiently state a claim or allege sufficient facts that plausibly establish each element of each cause of action alleged, upon which relief can be granted. Therefore, it should be dismissed.

In addition to the Complaint allegations and attached exhibit, Comfort Crew asks this Court to take judicial notice of the following materials:

1. USPTO Report for the Trademark – Report created January 9, 2025;

2. USPTO Report for the Own Your Power Trademark – Report created January 9, 2025; and

6

  3. Ohio Secretary of State Business Search results for "Comfort Crew" showing three active entities.

Comfort Crew requests that this Court take judicial notice of these materials because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Fed.R.Evid. 201(b)*. Courts have held "[p]ublic records and government documents are generally considered 'not to be subject to reasonable dispute.' This includes public records and government documents available from reliable sources on the Internet." (internal citations omitted.) *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972, aff'd sub nom. *Dingle v. Bioport Corp.*, 388 F.3d 209. The matters Comfort Crew asks this Court to take judicial notice of, are suitable facts the accuracy of which cannot reasonably be questioned where the U.S. Patent and Trademark Office and Ohio Secretary of State maintain public records which are publicly available.

### A. Standard Character Marks vs. Special Form Marks

There are two types of trademark drawings: (1) "Standard Character" which includes words, letters, numbers, or any combination thereof without claim to any particular font style, size, or color and which are submitted in black on a white background; and (2) "Special Form" which includes two or three-dimensional design; color; and/or words, letters, or numbers or the combination thereof in a particular font style or size which are submitted as a graphical depiction along with a description of the stylized mark. See *37 C.F.R. 2.52*. The United States Patent and Trademark Office maintains a Trademark Manual of Examining Procedure[3] ("TMEP") which provides the following description relating to standard character marks:

> **If a mark (in either an application or a registration) is presented in standard characters, the owner of the mark is not limited to any particular depiction of the mark.** *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 950, 55 USPQ2d 1842,

---

[3] https://tmep.uspto.gov/RDMS/TMEP/current#/current/d1e2.html - Last checked on January 13, 2025.

7

1847 (Fed. Cir. 2000); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *42 (TTAB 2022); *In re Aquitaine Wine USA, LLC*, 126 USPQ2d 1181, 1186 (TTAB 2018); *In re Cox Enters.*, 82 USPQ2d 1040, 1044 (TTAB 2007) . **The rights associated with a mark in standard characters reside in the wording (or other literal element, e.g., letters, numerals, punctuation) and not in any particular display.** *In re White Rock Distilleries Inc.*, 92 USPQ2d 1282, 1284 (TTAB 2009) . A registrant is entitled to all depictions of a standard character mark regardless of the font style, size, or color, and not merely "reasonable manners" of depicting such mark. *See In re Viterra Inc.*, 671 F.3d 1358, 1364-65, 101 USPQ2d 1905, 1910 (Fed. Cir. 2012); *Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 637 F.3d 1344, 1353, 98 USPQ2d 1253, 1259 (Fed. Cir. 2011); *In re Aquitaine Wine USA, LLC*, 126 USPQ2d at 1187 ("We hold that when we are comparing a standard character mark to a word + design mark for Section 2(d) purposes, we will consider variations of the depictions of the standard character mark only with regard to 'font style, size, or color' of the 'words, letters, numbers, or any combination thereof.'").

(Emphasis added.) *TMEP §1207.01(c)(iii)*. Within the TMEP, it is noted as follows:

> **The USPTO encourages the use of standard character drawings. As a general rule, an applicant may submit a standard character drawing when a word, letter, numeral, or combination thereof creates a distinct commercial impression apart from any stylization or design element appearing on the specimen.** If a mark remains the same in essence and is recognizable regardless of the form or manner of display that is presented, displaying the mark in standard character format affords a quick and efficient way of showing the essence of the mark. *In re wTe Corp.*, 87 USPQ2d 1536, 1539-40 (TTAB 2008) (reversing refusal on the ground that the standard character mark on the drawing was not a substantially exact representation of the mark as actually used, finding that SPECTRAMET creates a distinct commercial impression apart from any stylization or design element appearing on the specimens, on which the letter "C" was displayed with an arrow design);

(Emphasis added.) *TMEP §807.04(b)*.

Within the CFR, color marks are addressed as follows: "If the mark includes color, the drawing must show the mark in color, and the applicant must name the color(s), describe where the color(s) appear on the mark, and submit a claim that the color(s) is a feature of the mark." *37 C.F.R. §2.52(b)(1)*. In relation to color claims, the TMEP provides "Generally, if the applicant has not made a color claim, the description of the mark should not mention color, because a reference to color in the description of a non-colored mark creates a misleading impression." *Id. at §808.02*.

8

In the context of color special form marks, and the ability to correct inaccurate colors, the USPTO states as follows:

> When the color shown on the digitized image of the drawing in an electronic application, or on the drawing page of a permitted paper application, is inconsistent with the color claimed in the written application (e.g., the mark is shown in blue on the drawing, but the color claimed is orange), the drawing controls. The color claim may be corrected to conform to the drawing. **The drawing may not be corrected to conform to the color claim, unless the examining attorney determines that the amendment is non-material**.

(Emphasis added.) *TMEP §807.07(c)*.

Bloomer had the option of submitting a standard character claim which, if approved, would have protected the phrase "Comfort Crew" within the approved classes of goods and services without regard to the font, style, size, or design elements of its presentation. Instead, Bloomer chose to submit a special form application wherein Bloomer specifically sought approval his stylized graphical logo including "the words 'COMFORT CREW' in red all over the words 'HEATING AND AIR' in white" with the detailed colors being "claims as a feature of the mark." As a result, the Trademark only protects the particular display as approved within the Trademark itself including the specified colors which Bloomer claimed as a feature of the mark. The Trademark is the particular stylized use displayed as follows:



9

In this instance, it appears that the drawing and the written application are consistent in relation to the colors being named, the description of where the colors appear on the mark, and affirming the color(s) is a feature of the mark.

In an effort to manufacture a cause of action, Bloomer's Complaint intentionally conflates the Trademark with a literal element contained within the Trademark for purposes of alleging Comfort Crew has used the "Trademark in its company name, website, and advertising" without any evidence Comfort Crew has ever utilized any logo similar to the Trademark. Further, there is no evidence Comfort Crew has ever used the words "Comfort Crew" in a red font as set forth within the Trademark. Similar to the TMEP concern about creating misleading impressions through the use of color references in the absence of a color claim, Bloomer appears to intentionally mislead this Court by inviting this Court to ignore both its claimed color features and its special form display as a means of attacking Comfort Crew for its use of an unprotected phrase in an unprotected display format which is wholly dissimilar to the Trademark. Comfort Crew respectfully requests this Court decline Bloomer's invitation to ignore the limitations of its Trademark and to instead dismiss Bloomer's lawsuit in its entirety.

  **B. Count One should Appropriately be Dismissed because the Trademark is not a Standard Character Mark.**

The difference between a standard character mark trademark and a non-standard character mark is significant. Between 2011 and 2015 the USDC for the Southern District of New York was presented with a trademark infringement dispute where a Florida business owner sued Oprah Winfrey and several related entities in relation to a trademark of "Own Your Power." See *Kelly-Brown v. Winfrey*, 2012 WL 701262, *1, aff'd in part, vacated in part, 717 F.3d 295; *Kelly-Brown v. Winfrey*, 95 F.Supp.3d 350, 362, aff'd on other grounds, 659 Fed.Appx. 55. The USPTO report for the mark at issue within *Kelly-Brown* shows the mark was not a "standard character mark" but

was a color drawing which identified the literal elements "Own Your Power" in the context of an "illustration drawing with word(s)/letters(s)/number(s) in stylized form" which consisted of "light blue scripted letters which create the words Own Your 'Power'" with notation "the color(s) light blue is/are claimed as a feature of the mark." See attached **Exhibit 2**. The *Kelly-Brown* Court noted "[h]ad Defendants conducted a trademark search and come across Plaintiffs' registered mark, they would have noted that Plaintiffs' special form mark is limited to the stylized use of the phrase in 'light blue scripted font.' As noted above, Defendants' use does not resemble Plaintiffs' registered stylized mark." *Id.* at 95 F.Supp.3d 362. The special form stylized mark at issue in *Kelly-Brown* resulted in a conclusion under the Lanham Act that "A. The Phrase "Own Your Power" Is Not Protected" because the registration is limited to the stylized "light blue scripted" use, but that Plaintiffs held "no claim over the phrase itself." *Id.* at 358-59. Notably, while the *Kelly-Brown* Court stated the registration contained a disclaimer "No claim is made to the exclusive right to use own your power apart from the mark as shown" (which does not actually appear in the attached USPTO Report) the Court added a footnote acknowledging "Such a disclaimer was in any event unnecessary as 'special form' registration only applies to marks containing stylized words or a design element." *Id*. at Fn. 3.

      Within *Kelly-Brown*, the Court concluded the plaintiff's arguments failed for three reasons: "(1) the phrase "Own Your Power" is not protected; (2) even if the phrase were protected, there is not a shred of evidence establishing a likelihood of consumer confusion; and (3) even if Plaintiffs were to establish a likelihood of consumer confusion, the fair use defense applies." *Id*. at 357-58. While the *Kelly-Brown* dispute was not resolved upon a motion to dismiss, the facts of this case justify a dismissal at this early stage of litigation because the allegations of the Complaint conclusively establish the absence of any likelihood of consumer confusion. Similar to "Own Your

Power" lacking protection beyond its light-blue scripted use, Bloomer's Trademark does not provide any protection for "Comfort Crew" outside of its red-lettered use within the confines of the graphical depiction approved within the Trademark. The difference between these two cases relates to the likelihood of consumer confusion where Oprah has a world-wide presence and Kelly-Brown alleged to have been utilizing radio and video to create a global media presence wherein the Court was required to examine evidence before concluding plaintiff had failed to show "a likelihood of creating a global media presence capable of attracting an audience of millions." *Id*. at 361. In this case, Bloomer has alleged its geographic market is comprised of Oklahoma, Arkansas, and Kansas in relation to HVAC services. Bloomer's Complaint is devoid of any allegations supporting any likelihood of confusion where Indiana, Illinois, and Missouri serve as buffer-states between Bloomer's business operations and Comfort Crew's business operations.

In this case, the Trademark is a special form mark which only protects the highly stylized depiction of Bloomer's logo including a man carrying a wrench with the stylized colors of clothing, background shapes and colors, and the red and white lettering which are described and claimed as features within the Trademark. Comfort Crew is not using the Trademark and is not using any protected depiction of "Comfort Crew" but instead is using a relatively common name for HVAC companies with a wholly dissimilar logo in a location which is more than a half-day drive from Bloomer's customer base. "Comfort Crew" is not protected by the Trademark and even if the phrase were protected, the Complaint is devoid of any allegations supporting a likelihood of any actionable consumer confusion.

Wherefore, Comfort Crew requests dismissal of Count One of the Complaint on the basis the allegations and documents attached to the Complaint present an insuperable bar to the relief sought by Bloomer.

### C. Count Two should Appropriately be Dismissed because the Complaint and its Attached Exhibit Demonstrate the Absence of any Actionable Conduct.

Within the Complaint, Bloomer makes blatant mischaracterizations which are belied by the contents of the Trademark itself. Bloomer alleges Comfort Crew has engaged in "efforts to lure potential clients to the www.comfortcrewohio.com website by **using the Comfort Crew Trademark**" which Bloomer claims has caused "customers who would be interested in engaging the HVAC services of Plaintiff…to believe that they were and are contacting Plaintiff by going to Defendant's website." (Emphasis added.) (ECF No. 1 at ¶ 33). There is no evidence suggesting Comfort Crew has ever used the Trademark (or anything even loosely resembling the Trademark) and the screen shots included within ¶¶ 20-21 of the Complaint unequivocally demonstrate Comfort Crew is not using the Trademark. Even to the extent Bloomer intended to allege Comfort Crew was "using *a literal element contained within* the Comfort Crew Trademark" such an allegation would fall well short of presenting a claim upon which relief could be granted because as noted above, the "special form" Trademark at issue in this case does not provide any protection for the phrase "Comfort Crew" outside of the red-lettered use within Bloomer's graphical logo.

In addition to the misrepresentations by Bloomer attempting to fabricate a cause of action, the Complaint unequivocally alleges two wholly disconnected service areas wherein it is a logical impossibility for any potential consumers to be tricked into believing they were hiring the other company located 700+ miles away. No reasonable consumer bearing the intention of hiring Bloomer to perform HVAC services would be confused by the drastically different logos, nor would any reasonable consumer accidentally hire an HVAC company located 4 states away because of their adoption of a common name for HVAC companies. Notably, a search of the Ohio

Secretary of State database[4] shows three different entities in the HVAC industry registered to conduct business in the State of Ohio with names including "Comfort Crew" as follows:



Bloomer has failed to adequately allege any actual use of the Trademark and has similarly failed to adequately allege any false designations, false descriptions, or dilutions which could plausibly entitle Bloomer to relief. Wherefore, Comfort Crew requests dismissal of Count Two of the Complaint because Bloomer has failed to demonstrate any actionable conduct upon which relief could plausibly be granted.

### D. Count Three should Appropriately be Dismissed because the Complaint Fails to Adequately Plead a Claim for Dilution.

Within count three, Bloomer continues to conflate its "special form" Trademark with a "standard character" trademark for purposes of equating Comfort Crew's use of a literal element contained within the Trademark as an "unauthorized and objectionable use of" the Trademark itself. (ECF No. 1 at ¶¶ 38-39). Bloomer goes on to allege Comfort Crew has used the Trademark

---

[4] https://businesssearch.ohiosos.gov/ - Last checked on January 13, 2025.

"in its company name and on its website and domain name" but has wholly failed to present any instance of Comfort Crew's use of the Bloomer's logo (or anything resembling the logo) which is protected by the Trademark. On the contrary, Bloomer's Complaint very clearly establishes the fact that Comfort Crew is not using, and has never used, Bloomer's logo but instead is using a completely different logo which does not contain any of the design elements which were claimed by Bloomer as an element of its Trademark. (ECF No. 1 at ¶¶ 20-21).

Bloomer further alleges Comfort Crew's operations in Ohio have diminished "the capacity of the Comfort Crew marks [sic] to identify and distinguish Plaintiff's HVAC business from Defendants business in the same field." (*Id*. at ¶ 44). Notably, despite this plural reference, the Complaint plainly alleges the existence of only one Trademark which is a special form mark. Further, the Complaint plainly alleges the absence of any overlap between the geographical service areas of Bloomer's HVAC business and Comfort Crew's HVAC business and thus while they may technically be in the "same field" the Complaint fails to provide any factual allegations suggesting these two businesses co-exist in the same marketplace. Bloomer has not alleged having engaged in any business operations in the State of Ohio (nor any state sharing a boundary with Ohio) and has similarly failed to allege Comfort Crew ever engaged in any business operations within any state where Bloomer has conducted business. Bloomer's allegations of dilution are directly refuted by the substance of Bloomer's own Complaint whereupon the interests of justice and judicial economy support dismissal of Count Three of the Complaint.

    **E. Count Four should Appropriately be Dismissed because Bloomer's Allegations Clearly Demonstrate it has Never Conducted any Business Operations in Ohio.**

Similar to the previous claims, Bloomer's Complaint presents an insuperable bar to its request relief under Count Four. Within Count Four, Bloomer again claims "use of the Comfort Crew Trademark" despite simultaneously making unequivocal allegations to the contrary. Bloomer

15

further provides threadbare allegations of "confusingly similar variations" of the Trademark without any factual support as required by this Court's pleading standards. (ECF No. 1 at ¶¶ 49-50). Bloomer goes on to allege it has "suffered monetary loss of customers and business through the Defendant's unfair or deceptive acts, all in violation of the laws of the State of Ohio" (*Id*. at ¶ 50) without any factual support for the absurd contention any Ohio consumer would be a bona fide customer of Bloomer's Oklahoma-based business.

The Complaint is devoid of any factual support for the suggestion Comfort Crew has ever used the Trademark or anything similar to the Trademark. Similarly, the Complaint is unequivocal that Bloomer only conducts business in Oklahoma, Arkansas, and Kansas and thus it is implausible for Bloomer to allege any actionable loss of business within Ohio. Wherefore, Comfort Crew requests dismissal of Count Four of the Complaint because the allegations and attached documents present an insuperable bar to the relief sought by Bloomer.

**F. Count Five should Appropriately be Dismissed because Bloomer has Never Conducted Business within the State of Ohio and Holds no Common Law Trademark Rights in Ohio.**

Bloomer's claim for trademark protection under Ohio common law must fail because Bloomer has never engaged in business within the State of Ohio and has no rights to any alleged trademark under Ohio common law because it has never placed any such trademark in use within the State of Ohio. The fact Bloomer has been engaging in business in Oklahoma, Arkansas, and Kansas may be sufficient to establish common law protections within those States but falls well short of establishing any common law rights within the State of Ohio. Wherefore, Comfort Crew requests the dismissal of Count Five of the Complaint.

**G. Count Five should Appropriately be Dismissed because Bloomer has Never Conducted Business within the State of Ohio and Holds no Common Law Trademark Rights in Ohio.**

Bloomer's claim for unfair competition under Ohio common law must fail because Bloomer has never engaged in business within the State of Ohio and has failed to plead any efforts to engage in competition within the State of Ohio under which Ohio common law could be triggered. The fact Bloomer has been engaging in business in Oklahoma, Arkansas, and Kansas may be sufficient to establish common law protections within those States but falls well short of establishing any common law rights within the State of Ohio. Wherefore, Comfort Crew requests the dismissal of Count Six of the Complaint.

### III. CONCLUSION

Bloomer's Complaint fails to comply with the pleading requirements for federal cases where it is comprised predominantly of conclusory statements. The few factual allegations contained within the Complaint demonstrate Bloomer has never conducted any business in the State of Ohio, Comfort Crew has never conducted any business in Oklahoma, Arkansas, or Kansas, and the Trademark itself protects nothing more than the specific use approved therein including the cartoon man, his wrench and the color-specific depiction of Bloomer's logo. The factual allegations of the Complaint make clear Comfort Crew has never used the Trademark but is merely operating a HVAC business within Central Ohio using the name "Comfort Crew" which said name does not appear on any medium in red letters, within a yellow keystone, or in proximity to any cartoon man. To the extent any unfair competition exists in this case, Bloomer is the party engaging in unfair conduct wherein it is attempting to enforce a special form trademark as if it were a standard character trademark, within a geographic area it has never entered, for the greedy purpose of extorting a licensing fee it has no lawful right or entitlement to receive.

For purposes of this Motion, Comfort Crew requests this Court review the considerable number of conclusory allegations which are not entitled to the assumption of truth, accept as true all sufficiently factual allegations contained within the Complaint, and give due consideration to the plain language of the document attached thereto along with the three items Comfort Crew has asked this Court to take judicial notice of, to determine whether Bloomer has met his burden of showing more than a mere possibility that he might prevail on each claim. Comfort Crew respectfully requests this Court issue a decision dismissing each of Bloomer's six causes of action with prejudice and awarding it such other relief as this Court deems appropriate at law and equity.

Respectfully submitted,

/s/ Andrew C. Clark
Andrew C. Clark        (0083519) Trial Counsel
Colleen R. Vance       (0099665)
**Onda LaBuhn Ernsberger & Boggs Co., LPA**
acc@ondalabuhn.com
crv@ondalabuhn.com
35 North Fourth Street, Suite 100
Columbus, Ohio 43215
Phone: (614) 716-0500
Fax: (614) 716-0511
*Counsel for Defendant Comfort Crew Heating & Cooling, LLC*

## CERTIFICATE OF SERVICE

I certify a copy of this document has been served via email on January 13, 2025, upon:

Rachel N. Byrnes
**NELSON MULLINS RILEY & SCARBOROUGH**
Rachel.byrnes@nelsonmullins.com
*Counsel for Plaintiff*

/s/ Andrew C. Clark
Andrew C. Clark        (0083519)