UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BLOOMER HEAT & AIR LLC d/b/a COMFORT CREW HEATING & AIR,**  :  Plaintiff,  v.  **COMFORT CREW HEATING & COOLING LLC,**  :  Defendant. | Case No. 2:24-cv-4151  **Chief Judge Sarah D. Morrison**  **Magistrate Judge Kimberly A. Jolson** |

## OPINION AND ORDER

This matter is before the Court on Defendant Comfort Crew Heating & Cooling LLC's Motion to Dismiss. (Mot., ECF No. 7.) Plaintiff Bloomer Heat & Air LLC d/b/a Comfort Crew Heating & Air is an Oklahoma-based HVAC business. In 2016, Plaintiff registered a stylized trademark for its logo that includes the phrase "Comfort Crew". Plaintiff filed this suit challenging Defendant's use of a logo that includes the phrase "Comfort Crew".

For the reasons below, Defendant's Motion is **GRANTED**.

## I.   BACKGROUND

Plaintiff is an Oklahoma-based company formed in 2014 that provides residential HVAC services. (Compl., ECF No. 1, ¶¶ 2–4.) Plaintiff has done business in Oklahoma, Kansas, and Arkansas, and is continuing to grow its business throughout the country. (*Id.* ¶ 5.) In April 2016, it registered a mark for a design on

the Principal Register maintained by the U.S. Patent and Trademark Office (the "Mark"):



(Compl., ¶ 12; Pl.'s Ex. A, ECF No. 1-1.) Plaintiff's Mark was registered with the description:

> No claim is made to the exclusive right to use "Heating & Air", apart from the mark as shown.
>
> The color(s) green, red, white, black, aqua, gray, tan and yellow is/are claimed as a feature of the mark.
>
> The mark consists of an image of a man with tan skin, a white shirt, black hair, an aqua hat and aqua jacket, red pants and black shoes. The man is carrying a gray wrench positioned above a keystone shape containing the words "COMFORT CREW" in red all over the words "HEATING AND AIR" in white superimposed over a green rectangle. The keystone shape appears in the color yellow with a green outline. A yellow border appears around the entire mark.

(Pl.'s Ex. A, ECF No. 1-1.)

Plaintiff has used its Mark to promote its business for more than 8 years. (Compl., ¶ 15.) It has maintained a high reputation in the communities it serves, and its Mark is recognized by consumers seeking HVAC services because it provides such services, its reputation, and its promotion efforts. (*Id.* ¶ 16–17.) Plaintiff displays the Mark on its website, www.thecomfortcrew.com. (*Id.* ¶ 11.)

Defendant is an Ohio company formed in 2023 that also provides HVAC services. Defendant's website, www.comfortcrewohio.com, displays Defendant's logo as depicted below in the white rectangle (the "Logo"):



(Compl., PAGEID # 5.) An online search for the phrase "Comfort Crew" often includes Defendant's website as one of the first results. (Compl., ¶ 21.)

On May 15, 2024, a customer who was trying to reach Defendant called Plaintiff by mistake. (*Id.* ¶ 23.) Plaintiff now asserts that Defendant's Logo, name, and website infringe on its trademark rights.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

3

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### III. ANALYSIS

Plaintiff asserts claims for federal trademark infringement and unfair competition and their Ohio common law counterparts (Counts I, II, V, and VI), federal trademark dilution (Count III), and deceptive trade practices under Ohio Rev. Code § 4165.02 (Count IV). Defendant moves to dismiss all six claims.

#### A. Trademark Infringement, Unfair Competition, and Ohio Law Claims

"[T]he same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes[,]" so

4

the Court will address Counts I, II, IV, V, and VI together.[1] *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 724 n.8 (S.D. Ohio 2002) (Smith, J.). To state a claim for infringement of a registered trademark,[2] a plaintiff must show that: (1) it owns the registered trademark; (2) the defendant used the trademark in commerce; and (3) the use was likely to cause confusion. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). "Generally, dismissal for failure to state a claim upon which relief can be granted is appropriate in only the most extreme trademark infringement cases, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact." *Id.* (citation omitted).

Accepting Plaintiff's well-pleaded factual allegations as true, the Court finds that this is one such extreme case because Plaintiff has not plausibly alleged a likelihood of confusion—the "touchstone of [trademark] liability." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir.

---

[1] Defendant argues that Plaintiff cannot bring Ohio law claims because Plaintiff only conducts business in Oklahoma, Arkansas, and Kansas and thus could not have lost business in Ohio. (Mot., PAGEID # 38–40.) The Court need not resolve this issue because the Ohio law claims fail as a matter of law for the same reasons that the federal trademark infringement and unfair competition claims fail.

[2] Plaintiff alleges without support that it has "common law rights in the name "Comfort Crew[.]"" (Compl., ¶ 12.) To the extent it asserts its claims based on common law rights to an unregistered mark in the phrase "Comfort Crew", those claims must fail because Plaintiff only operates in Arkansas, Oklahoma, and Kansas. "At common law, ownership of trademark or service mark rights is obtained by actual use" where "[t]he first to use a mark…gains common law rights to the mark in the geographic area in which the mark is used." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 571–72 (6th Cir. 2001) (citing 2 McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed. 2000)).

1997). Accordingly, it addresses only the third element of the claim and assumes Plaintiff has sufficiently pled the first two elements.

### 1. Likelihood of Confusion

"'The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 508 (6th Cir. 2023) (quoting *Hensley*, 579 F.3d at 610) (alteration in original). When determining whether there was a likelihood of confusion, courts first ask whether the defendant is using the challenged mark in a "trademark way" by using it to "identif[y] the source of [its] goods.'" *Id.* at 508–09 (citing *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003)). Defendant does not contend that it uses its Logo in a non-trademark way.

If the defendant uses the challenged mark in a trademark way, courts then weigh the following eight-factors to determine whether a likelihood of confusion exists: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the intent of the defendant in selecting the mark, and (8) the likelihood of expansion of the product lines. *See id.* at 509. These factors are meant to be helpful guides rather than rigid requirements with the ultimate question remaining "'whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated

6

in some way.'" *Id.* (quoting *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013)).

At the motion to dismiss stage, courts apply the factors to determine whether the complaint contains sufficient factual matter to show that the defendant's challenged use was likely to cause confusion. *See id.* Applying the factors here, the Court finds that Plaintiff failed to plausibly allege a likelihood of confusion between its Mark and Defendant's Logo.

### a) Strength of the Mark

When a mark is incontestable under 15 U.S.C. § 1065,[3] "'it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark.'" *Leelanau*, 502 F.3d at 516 (quoting *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595 (6th Cir.1991)). "The unit of analysis in considering the strength of the mark is the entire mark, not just a portion of the mark." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004). Here, Plaintiff's Mark has been registered for more than five years and therefore carries a presumption of strength.

Defendant does not attempt to rebut this presumption other than to dispute that Plaintiff's Mark protects any depiction of the phrase "Comfort Crew" outside of

---

[3] "Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark is valid, that is, either inherently distinctive or descriptive with secondary meaning, and therefore, protectable under federal trademark law." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007) (citing 15 U.S.C. § 1115(a)). A mark becomes "incontestable" when it has been registered on the Principal Register of the USPTO and unchallenged for five years. 15 U.S.C. § 1065; *Daddy's*, 109 F.3d at 282. It is undisputed that Plaintiff's Mark has been registered on the Principal Register and unchallenged for more than five years, so it is incontestable.

7

"the stylized presentation within the approved Trademark." (Def.'s Mot., PAGEID # 98.) But Plaintiff concedes that its Mark is a special form mark[4] and does not argue that the Mark's presumption of strength applies to the phrase "Comfort Crew" beyond its red-lettered depiction in the Mark. (Pl.'s Resp., ECF No. 16, PAGEID # 78, 83–83.) Thus, this factor weighs in Plaintiff's favor.

### b) Relatedness of the Goods

Services and goods "'are 'related' not because they coexist in the same broad industry, but are 'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company.'" *Daddy's*, 109 F.3d at 282–83 (quoting *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir.1991)). "[I]f the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors[.]" *Id.* at 282. "The type of consumers, their use of the good or service, and their location can all affect whether parties are in direct competition." *Heaven Hill Distilleries, Inc. v. Log Still Distilling, LLC*, 575 F. Supp. 3d 785, 824 (W.D. Ky. 2021).

---

[4] A special form "includes a two or three-dimensional design; color; and/or words, letters, or numbers or the combination thereof in a particular font style or size[,]"while a standard character mark consists of "words, letters, numbers, or any combination thereof without claim to any particular font style, size, or color[.]" 37 C.F.R. § 2.52.

8

Here, the likelihood of confusion turns on other factors because although the parties offer identical services (HVAC), they operate in different geographic territories and thus do not compete.

### c) Similarity of the Marks

"Similarity of marks is a factor of considerable weight." *Daddy's*, 109 F.3d at 283. "When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks." *Id.* Courts "must view marks in their entirety and focus on their overall impressions, not individual features." *Id.* The relevant inquiry is whether "the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who may have a 'general, vague, or even hazy, impression or recollection' of the other party's mark." *Wynn Oil Company v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988) (citation omitted).

Plaintiff's Mark and Defendant's Logo are not confusingly similar. While both contain the phrase "Comfort Crew" over a phrase that begins "Heating &", that is where the similarities end. Comparing the Mark and Logo in their entireties, even consumers with hazy impressions of the Mark are unlikely to confuse it with the Logo. The color schemes, typeface, and graphics are different. Plaintiff's Mark uses primary colors with red and white text, a solid yellow background, and a green outline. Defendant's Logo uses no primary colors; it has black text and a white background with a bright green shape resembling a paint smear. The typeface styles are visually distinct—the text in Plaintiff's Mark has softer edges than the

angular text in Defendant's Logo. Plaintiff's Mark displays "Comfort Crew" in an anvil-shape and "Heating & Air" in an oval; Defendant's Mark displays "Comfort Crew" in a hexagon and "Heating & Cooling" in a square. Plaintiff's Mark features a cartoon man holding an oversized wrench; Defendant's Logo has no arguable companion feature.

This factor weighs heavily against a likelihood of confusion.

### d) Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn*, 839 F.2d at 1188. But "[d]ue to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant[.]" *Daddy's*, 109 F.3d at 284.

Plaintiff alleges that one consumer called Plaintiff by mistake when trying to reach Defendant. (Compl. ¶ 23.) Even accepting this call as true, Plaintiff provides no factual support that the mistake occurred because the consumer was confused between Plaintiff's Mark and Defendant's Logo. Because evidence of actual confusion is not required to properly plead a claim for trademark infringement, this factor is neutral. *See Bliss*, 82 F.4th at 512.

### e) Marketing Channels Used

"Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases." *Therma–Scan v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002). While it is undisputed that both Plaintiff and Defendant advertise their services on websites that include their

10

respective logos, Plaintiff's customers are in Oklahoma, Kansas, and Arkansas while Defendant's customers are in Ohio. In fact, Defendant's website makes clear that it offers its services in Ohio. Although Plaintiff alleges that it is continuing to grow its business, it makes no allegations that it targets its marketing efforts to Ohio residents or that Defendant targets its efforts to Oklahoma, Kansas, or Arkansas residents. This factor weighs against a likelihood of confusion.

### f) Likely Degree of Purchaser Care

For "an ordinary buyer, the standard for determining whether he or she would differentiate between products with similar trademarks is the exercise of ordinary caution." *Therma-Scan*, 295 F.3d at 638. "The effect of purchaser care, although relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue." *Daddy's*, 109 F.3d at 286.

As discussed above, Plaintiff's Mark and Defendant's Logo are not similar and thus customers are unlikely to be confused even if exerting a low degree of care. This factor is neutral.

### g) Intent

Plaintiff does not allege Defendant intended to use a confusingly similar mark. Accordingly, this factor is neutral as a "lack of intent has no effect on the determination of likelihood of confusion." *Kibler v. Hall*, 843 F.3d 1068, 1081 (6th Cir. 2016).

### h) Likelihood of Expansion

"'[A] strong possibility that either party will expand [its] business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing.'" *Bliss*, 82 F.4th at 514 (quoting *Homeowners*, 931 F.2d at 1112). But a negative finding "is *not* a strong indication to the contrary." *Daddy's*, 109 F.3d at 287 (quoting *Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996)). Plaintiff alleges that it is continuing to grow its business "throughout the country", but makes no allegations of its efforts or intent to expand into Ohio. Accordingly, this factor is neutral.

### i) Balancing the Factors

In sum, Plaintiff has alleged only one of the eight factors that would favor finding a likelihood of confusion, so it has not plausibly alleged its federal trademark infringement, federal unfair competition, and Ohio law claims.

Accordingly, those claims (Counts I, II, IV, V, and VI) are **DISMISSED**.[5]

### B. Trademark Dilution

To succeed on a trademark dilution claim, a plaintiff must show the senior mark is (1) famous; and (2) distinctive. Use of the junior mark must (3) be in commerce; (4) have begun subsequent to the senior mark becoming famous; and (5)

---

[5] To the extent Plaintiff's infringement claims challenge Defendant's use of "Comfort Crew" in Defendant's business name and domain name, such a challenge likewise fails because there is even less similarity between Plaintiff's Mark and Defendant's use of "Comfort Crew" in non-stylized contexts.

cause dilution of the distinctive quality of the senior mark. *AutoZone*, 373 F.3d at 802.

"[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125. Courts have required the mark to be "a household name, such that 'when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner.'" *Scotts Co. LLC v. SBM Life Sci. Corp.*, 749 F. Supp. 3d 865, 874 (S.D. Ohio 2024) (Sargus, J.) (citing *Kibler*, 843 F.3d at 1083). "Examples of marks courts have found sufficiently famous are 'Nike, Pepsi, Nissan, Audi, Hershey's [and] Victoria's Secret'—brands with 'a strong national presence,' a 'significant international presence,' and 'market dominance.'" *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 841 (E.D. Mich. 2015), *aff'd*, 672 F. App'x 575 (6th Cir. 2017) (quoting *Maker's Mark Distillery, Inc. v. Diageo N. America, Inc.*, 703 F. Supp. 2d 671, 698–699 (W.D. Ky. 2010)).

Plaintiff alleges that its Mark has become "well known and famous" under the Lanham Act. (Compl. ¶ 41.) But Plaintiff's only factual supports for this conclusion are that it displays the Mark on its website and that it maintains a high reputation in the Oklahoma, Arkansas, and Kansas communities. (Compl. ¶¶ 4, 11.) Niche fame is insufficient to support a trademark dilution claim. *Kassa*, 150 F. Supp. 3d at 841.

Accordingly, Plaintiff's trademark dilution claim (Count III) is **DISMISSED**.

## IV. CONCLUSION

For the reasons above, Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED**.

    **IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**